**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HAMETT DIAZ, | No. 4:20-CV-01667 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| DEREK OBERLANDER, | |
| Respondent. | |

**MEMORANDUM OPINION**

**FEBRUARY 14, 2023**

Petitioner Hamett Diaz, ("Diaz"), an inmate confined in the Forest State Correctional Institution, Marienville, Pennsylvania, files the instant counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed in the Court of Common Pleas of Monroe County in criminal case CP-45-CR-0000396-2014.

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

## I.    BACKGROUND

The relevant facts and procedural history, extracted from the Pennsylvania Superior Court's May 7, 2020 decision, affirming the denial of Diaz's PCRA petition, are as follows:

[Appellant] is the stepfather of K.C., a 15 year old female. K.C. has a 17 year old friend, K.O., who is the victim (hereinafter referred to as "Victim"). On October 19, 2013, at around 12:00 p.m., [Appellant] drove K.C. and Victim from Blakeslee, Monroe County, Pennsylvania to New York City, NY, so that K.C. and Victim could get their nails done. During the drive, [Appellant] furnished K.C. and Victim with alcohol. [Appellant] also drank alcohol. While in New York when K.C. was getting her nails done, [Appellant] and Victim went to a liquor store in order to purchase more alcohol.

After K.C. and Victim were finished with their nails, [Appellant], K.C., and Victim headed back to Pennsylvania. Upon returning to Pennsylvania, they stopped at a Burger King restaurant for Victim to use the bathroom. Victim was so intoxicated, she required assistance walking to and using the bathroom. Around 11:00 p.m., [Appellant], K.C. and Victim arrived back at [Appellant] and K.C.'s home in Blakeslee. When they arrived at the home, [Appellant] sent K.C. into the house to see if K.C.'s mother, [Appellant's] wife, was awake.

After K.C. went into the house, [Appellant] drove off with the Victim to a secluded service road. At this point, Victim began zoning in and out. After pulling onto the service road, Victim recalls [Appellant] getting out of the minivan, opening the trunk door, and laying out the backseat. [Appellant] then called Victim to move to the back of the minivan. When Victim moved to the back of the minivan she hit her head. The next thing Victim recalls she was lying on her back in the rear of the minivan. Victim then remembers [Appellant] putting his mouth on her vagina. Victim recalls [Appellant] putting his penis in her vagina. She testified that she was in and out of consciousness and that she was so intoxicated she was slurring her words and unable to speak.

[Appellant] and Victim arrived back at [Appellant] and K.C.'s house and she was unable to walk. Victim stated she "crawled" up the stairs. When Victim entered the house, she was crying and she immediately told K.C. that she and [Appellant] had driven down the mountain and she believed "something may have happened." K.C. then helped Victim wash up, get changed, and get into bed.

Victim later woke up around 4:00 a.m. on October 20, 2014, and told K.C. that she thought [Appellant] had sex with her. K.C. confirmed that Victim had come back to the house crying. Victim then called her ex-

boyfriend about the incident. Victim's ex-boyfriend told his mother; the ex-boyfriend's mother called Victim's mother who called the police. Victim's mother then drove to [Appellant's] house and waited with Victim until the police arrived. The police arrived with an ambulance and Victim was transported to the hospital.

**Commonwealth v. Diaz**, 152 A.3d 1040, 1042 (Pa.Super. 2016) (quoting Trial Court Opinion, 10/2/15, at 1-3).

Appellant was convicted by a jury of rape of a person who is unconscious, aggravated indecent assault, unlawful contact with a minor, corruption of minors, and endangering the welfare of children. The trial court sentenced him to a mandatory minimum sentence on the rape conviction pursuant to 42 Pa.C.S. § 9714(a)(2) ("Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement"). On appeal, this Court vacated the judgment of sentence after concluding that the mandatory minimum sentence was inapplicable. Appellant was resentenced on September 8, 2017, to an aggregate term of incarceration of 140 to 280 months, and he did not file a direct appeal.

On September 15, 2018, Appellant filed the instant, counseled PCRA petition in which he identified three omissions of trial counsel that he contended deprived him of a fair trial. First, he faulted counsel for failing to object to inculpatory hearsay testimony elicited from Victim. Second, he alleged that counsel should have called four witnesses, some of whom would have impeached Victim's testimony regarding her level of intoxication and others also offering testimony as to the reasons why Appellant went to New York the next day. Several of the witnesses would have confirmed that Appellant's minivan remained in Appellant's driveway for at least one week in order to contradict State Police Trooper Wesnak's testimony that he did not obtain a search warrant for DNA testing on the minivan because he could not locate it until such time as the testing would have been futile. Finally, Appellant alleged that counsel was ineffective when he failed to object and seek a curative instruction when the Trooper testified that Appellant opted not to answer questions on the advice of his attorney.

Following an evidentiary hearing on March 25, 2018, the PCRA court concluded that no relief was due. Appellant timely appealed, and both

3

Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents three issues for our review:

I.  Whether the trial court erred[1] in denying the [PCRA] Petition where trial counsel was ineffective in failing to object to the admission of hearsay testimony in which multiple witnesses testified that [Appellant's] step-daughter, K.C., confirmed that [Appellant] raped [Victim] and encouraged [Victim] to call for help.

II. Whether the trial court erred in denying the [PCRA] Petition where trial counsel was ineffective in failing to call defense witnesses who would have directly impeached critical testimony from the Commonwealth's witnesses such as the allegations that [Victim] was too intoxicated to consent to sexual intercourse and that [Appellant] had tampered with the alleged crime scene and fled the jurisdiction.

III. Whether the trial court erred in denying the [PCRA] Petition where trial counsel was ineffective in failing to object to the investigating officer's disparagement of [Appellant's] refusal to give a statement and instead hire an attorney on the basis that the testimony violated [Appellant's] rights to counsel and his rights against self-incrimination under the Pennsylvania and United States Constitutions.[2]

In a Memorandum Opinion filed May 7, 2020, the Superior Court affirmed, finding no error in the PCRA court's conclusion that Petitioner was not entitled to relief on his claims.[3]  On January 6, 2021, the Pennsylvania Supreme Court denied Diaz's petition for allowance of appeal.[4]

---

[1]  This Court notes that while the Pennsylvania Superior Court identifies the issues raised as trial court error, they address the issues in the same manner as the PCRA court did, solely as trial counsel ineffectiveness.

[2]  *Commonwealth v. Diaz*, 1965 EDA 2019 at 1-4, 237 A.3d 436, 2020 WL 2200741 (Pa. Super. 2020) (unpublished memorandum).

[3]  *Id*.

[4]  *Commonwealth v. Diaz*, No. 449 MAL 2020, 244 A.3d 5 (Table) (Pa. 2021).

On August 10, 2020, while Diaz's state court litigation was pending, he filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania.[5]  By Order dated September 11, 2020, the Eastern District transferred Diaz's action to the Middle District.[6]  On September 15, 2020, Diaz filed a motion to stay his federal proceedings while he exhausted his state court remedies.[7]  By Memorandum and Order dated September 18, 2020, Petitioner's motion to stay was granted and Petitioner was directed to notify the Court within thirty (30) days of the termination of his pending state court review.[8]

On March 1, 2021, after exhausting state court remedies, a counseled amended petition was filed on behalf of Diaz, raising for federal review, the following three issues of ineffective assistance of counsel:

> 1.  Trial counsel failed to object to inadmissible hearsay testimony from Diaz's stepdaughter in which she confirmed that Diaz had raped the complainant, who was her 17-year-old friend. Because this was essentially a one-witness case in which the complainant alleged that Diaz assaulted her, the failure to object to this patently inadmissible testimony provided the jury with corroboration in a case in which there would have been no corroboration. Trial counsel allowed multiple witnesses to testify to this hearsay despite the fact that Diaz's stepdaughter did not testify at trial.
>
> 2.  Second, trial counsel was ineffective in failing to call defense witnesses who would have impeached the testimony of the investigating officer and the complainant. The complainant claimed at trial that the alleged assault took place while she was incapacitated from

---

[5]  Doc. 1.
[6]  Doc. 5.
[7]  Doc. 7.
[8]  Doc. 11.

drinking alcohol, but three of Diaz's family members saw her shortly after the alleged assault and saw that she did not exhibit any signs of intoxication. Trial counsel inexplicably failed to call these witnesses at trial to impeach her testimony.

3. Third, trial counsel was ineffective in failing to object when the investigating officer disparaged Diaz's decision to retain counsel and decline to give a statement. This testimony should have resulted in a mistrial, or at a minimum, a cautionary instruction, as the jury was left with the inference that Diaz must have been guilty because he decided to exercise his Fifth and Sixth Amendment rights rather than give a statement to police.[9]

On March 17, 2021, the above captioned action was reopened and a Show Cause Order, requiring a response to the petition, was issued.[10]  On April 5, 2021, a response was filed;[11] on March 14, 2022, Petitioner filed a supplement to his amended petition.[12]

## II.    DISCUSSION

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.[13] Petitioner's case is governed by the AEDPA, 28 U.S.C. § 2254, which provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[9]   Doc. 16.
[10]  Doc. 17.
[11]  Doc. 18.
[12]  Doc. 19.
[13]  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).

...

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....[14]

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.[15]  A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[16]  This limitation places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.[17]

---

[14]  28 U.S.C. § 2254.

[15]  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).

[16]  28 U.S.C. § 2254(a).

[17]  *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

Further, a federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law.[18]

## A.    Merits Analysis

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[19]

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction,"[20] "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."[21]  Here, the burden is on Diaz to prove entitlement to the

---

[18]   *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").

[19]   28 U.S.C. § 2254(d).

[20]   *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted),

[21]   *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted).

writ.[22]

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[23]  "[A] state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770.  As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495."[24]  A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court.[25]

---

[22]  *Id.*
[23]  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
[24]  *Mathias v. Superintendent Frackville, SCI*, 876 F.3d 462, 476 (3d Cir. 2017).
[25]  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.    Ineffective Assistance of Counsel

Diaz raises three ineffective assistance of counsel claims. The clearly established ineffective assistance of counsel standard as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688, 104 S.Ct. 2052. This review is deferential:
>
> > A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong

> presumption that counsel's conduct falls within the wide range
> of reasonable professional assistance....
>
> *Id*. at 689, 104 S.Ct. 2052
>
> Not every "error by counsel, even if professionally
> unreasonable, ... warrant[s] setting aside the judgment of a
> criminal proceeding." *Id*. at 691, 104 S.Ct. 2052. "Even if a
> defendant shows that particular errors of counsel were
> unreasonable, ... the defendant must show that they actually
> had an adverse effect on the defense"; in other words, the
> habeas petitioner must show that he was prejudiced by
> counsel's deficient performance. *Id*. at 693, 104 S.Ct. 2052.
> To establish prejudice, "[t]he defendant must show that there
> is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have
> been different. A reasonable probability is a probability
> sufficient to undermine confidence in the outcome." *Id*. at 694,
> 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate
focus of inquiry must be on the fundamental fairness of the
proceeding.... In every case the court should be concerned with whether
... the result of the particular proceeding is unreliable because of a
breakdown in the adversarial process that our system counts on to
produce just results." *Id*. at 696, 104 S.Ct. 2052.[26]

When the state court has decided the claim on the merits, "[t]he question 'is

not whether a federal court believes the state court's determination' under the

*Strickland* standard 'was incorrect but whether that determination was

unreasonable—a substantially higher threshold.' "[27] "And, because the *Strickland*

---

[26] *Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010).

[27] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan, 550 U.S. 465, 473 (2007)*).

standard is a general standard, a state court has even more latitude to reasonably

determine that a defendant has not satisfied that standard."[28]

The Superior Court stated that the proper standard governing ineffective

assistance of counsel claims is as follows:

> In order to overcome that presumption, "a PCRA petitioner must plead
> and prove that: (1) the legal claim underlying the ineffectiveness claim
> has arguable merit; (2) counsel's action or inaction lacked any
> reasonable basis designed to effectuate petitioner's interest; and, (3)
> counsel's action or inaction resulted in prejudice to petitioner."
> *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015).

> In determining whether counsel had a reasonable basis, the issue is not
> "whether there were other more logical courses of action which counsel
> could have pursued[,]" but "whether counsel's decisions had any
> reasonable basis." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa.
> 2014) (citations omitted). If it is a matter of strategy, we will not find a
> lack of reasonable basis unless "an alternative not chosen offered a
> potential for success substantially greater than the course actually
> pursued." *Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014). In
> order to demonstrate prejudice, "a petitioner must show that there is a
> reasonable probability that, but for counsel's actions or inactions, the
> result of the proceeding would have been different." *Mason, supra* at
> 389. All three prongs of the test must be satisfied in order for a
> petitioner to be entitled to relief. *Id*.[29]

The United States Court of Appeals for the Third Circuit has specifically held that

the very ineffectiveness assistance of counsel test relied upon by the Superior

Court in this matter is not contrary to the Supreme Court's *Strickland* standard.[30]

---

[28] *Id*.

[29] *Commonwealth v. Diaz*, 1965 EDA 2019 at 5-6, 237 A.3d 436, 2020 WL 2200741 (Pa.
Super. 2020) (unpublished memorandum).

[30] *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

Therefore, the Court finds that the Superior Court's decision is not contrary to *Strickland*.

The Court next considers whether the state courts' disposition of Diaz's exhausted ineffective assistance of counsel claims involved an unreasonable application of *Strickland* or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

> **1.    Trial counsel was ineffective in failing to object to inadmissible, incriminating hearsay testimony.**

Diaz argues that defense counsel was ineffective in failing to object to the victim's testimony regarding her conversation with Diaz's stepdaughter, K.C., who confirmed that Diaz raped the complainant and encouraged the complainant to call for help.[31]  Diaz claims that defense counsel should have objected to the statements as both hearsay and as violative of his right to confrontation under the Pennsylvania and United States Constitution.[32]

In recounting the testimony at issue, the PCRA court addressed Petitioner's ineffective assistance claim as follows:

> Q:    And then at some point, did you wake up or regain consciousness or something?
> A:    Yes.
> Q:    And then what happened then at that point?
> A:    Well, then I woke up it was 4:30 and then I had told [K.C.] like I had this crazy dream. And she was like, oh [K.C.], it wasn't a dream. And she was – then I said, you know, what do you mean? She was like everything that you told me, it happened. So then

---

[31]  Doc. 16 at 26.
[32]  *Id.*

she said that I needed to – so then I started crying and she said I needed to tell somebody.[33]

She also repeated parts of a phone call she heard between K.C. and K.O's ex-boyfriend, where K.C. told him "my stepfather [the Defendant] raped [K.O.]." (N.T., Volume I, at 52). Continuing in her testimony, she recalled K.C. telling her mother "it was true" that Defendant had raped K.O. (N.T. Volume 1 at 54.) Trial counsel did not make a hearsay objection during the victim's testimony.

On cross examination, defense counsel referred to K.O.'s fragmentary memory of the rape to elicit hearsay implying she only came to believe it happened on K.C.'s insistence.[34]

Q:    And when you wake up you tell [K.C.] that you thought you had a dream that you had sex with my client?
A:    Yes.
Q:    And you said, I'm not sure if I was dreaming or if this is true, right?
A:    Yes.
Q:    And she says, it's true, right?
A:    Yes.
(N.T. Volume 1, at 74.)

Defendant claims counsel had no conceivable reason not to object to this testimony, or to elicit it. (Defendant's Brief at p. 7.) The parties do not dispute that the testimony in question constitutes hearsay. To

---

[33]  Doc. 16-1 at 131.

[34]  Defendant claims trial counsel introduced more hearsay through the testimony of Nurse Showers. (PCRA Petition, 8/15/18, at p. 13.) The Commonwealth called Nurse Showers. On cross, counsel asked the witness to explain her finding recorded on a report she produced after examination of K.O. for evidence of sexual assault; the Commonwealth introduced the report as an exhibit. (N.T., Volume 1, at 131.) He accented parts of the report where K.O.'s recollections might have seemed "hazy" to the witness. He questioned Nurse Showers about her conclusions that K.O.'s body had no signs of physical injury. (N.T., Volume 1, at 142-53.) Trial counsel did not, then, introduce hearsay. Defendant does not claim counsel should have objected to the exhibit. If Defendant had, it would have been meritless. Statements recorded in the course of medical examination may be admitted to prove acts of sexual abuse under the medical-treatment exception to the hearsay rule. *See Commonwealth v. Stanford*, 580 A.2d 784, 792 (Pa. Super. 1990). Regardless, Defendant has not developed this argument at the hearing or in his brief, so we cannot rule on it. *See Commonwealth v. DiNicola*, 866 A.2d 329, 335-37 (Pa. 2005).

begin, we note that that not objecting to hearsay testimony is not ineffectiveness *per se.  See, e.g., Commonwealth v. Thomas*, 578 A.2d 422, 423 (Pa. Super. 1990) (analyzing all elements of the ineffectiveness test applied to a failure-to-object claims, because no presumption arises directly from that omission).

Trial counsel's testimony at the PCRA hearing shows he intended to have the jury hear the testimony, as it supported the defense theory of the crime.  He strategized that the prosecution could not prove intercourse beyond a reasonable doubt if it could have occurred entirely as a figment of K.O.'s intoxication.  (N.T., PCRA Hearing, at 8-9, 12-13, 14, 16, 24-25.)  Counsel testified that he believed the hearsay statements would show K.O. waking up certain about her own memories, suggesting she was capable of imagining the crime based on K.C.'s suggestion as compensation for her memory loss.  (N.T., PCRA Hearing, at 8-9, 12-13, 14, 16, 24-25.)  Allowing the victim to narrate her realization with K.C. provided the most direct evidence to support this theory.  (N.T., PCRA Hearing, at 24-25, 27-28.)  Further, allowing the Commonwealth to introduce the victim's statement for this purpose avoided the defense having to call K.C. herself.  Counsel stated he would not have called K.C. to testify, as her testimony could have reflected poorly on the defense.  (N.T., PCRA Hearing, at 24.)  Counsel's testimony shows he acted with a strategic basis, which he designed to advance an alternate theory that supports Defendant's innocence.[35]

The Superior Court adopted the PCRA court's findings, crediting trial

counsel's explanation of his strategy as follows:

The PCRA court credited trial counsel's explanation of the reason why he did not object. PCRA Court Opinion, 6/11/19, at 11. The court also concluded that counsel "acted with a strategic basis, which he designed to advance an alternate theory that supports [Appellant's] innocence." *Id*. at 10. According to the PCRA court, both Victim's hearsay testimony of her conversation with K.C. and her account of K.C.'s conversation with Victim's boyfriend served the same strategic purpose, and thus, did not lack a reasonable basis.

---

[35]   Doc. 16-1 at 131-133.

Appellant contends that counsel had no reasonable strategic basis for failing to object to hearsay statements made by a non-testifying witness that Appellant raped Victim. Appellant's brief at 8. He alleges further that counsel recognized the damaging nature of the statements when he established on cross-examination that the declarant would not have had any personal knowledge of whether a rape occurred. *Id*. Appellant maintains that, "to the extent that trial counsel actually pursued a theory that [Victim] had confused a dream for reality, trial counsel already had what he needed to argue such a theory . . . without admitting inculpatory hearsay." *Id*. at 9. He directs our attention to Victim's testimony that she believed the alleged incident was dream. N.T. Trial Vol. 1, 2/11/15, at 170. He contends that counsel could have argued that Victim imagined the incident without allowing hearsay evidence of statements by K.C. incriminating Appellant. Appellant argues in the alternative that there were wiser strategies, such as arguing that Victim "fabricated the assault allegations rather than explain to her friend that she had consented to sexual intercourse with her friend's married step-father."[36] Appellant's brief at 10.

Counsel's assistance is deemed constitutionally effective "if he chose a particular course that had some reasonable basis designed to effectuate [the] client's interest." *Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012). Counsel admittedly chose a hybrid strategy, which required him to walk a fine line between the scenario where Victim was so intoxicated that her memory was unreliable, and the situation where, although she had been drinking, she was not unconscious and, thus, capable of consenting. In either scenario, there was no rape. With regard to the first strategy, counsel sought to establish that K.C. made up the rape and suggested that it occurred to the intoxicated and confused Victim. The value in the hearsay testimony lay in painting K.C., whom counsel established was not present when the rape allegedly occurred, who would have had no personal knowledge of the facts, and who did not testify at trial, as the fabricator of the rape story. Furthermore, K.C. propagated the lie when she called Victim's former

---

[36] In the PCRA court, Appellant argued that the only two realistic defenses once the Commonwealth introduced DNA testimony were: (1) that Victim was capable of consenting, in fact consented, and later fabricated the rape allegation; or (2) that the DNA results were erroneous. *See* Defendant's Supplemental Brief, 5/12/19, at 4. The PCRA Court found that neither strategy was "so much more likely to succeed that it made trial counsel's chosen defense unreasonable." *See* PCRA Court Opinion, 6/11/19, at 10 n.4.

boyfriend to report it. Admittedly, the strategy was not successful, but it was not unreasonable.

The existence of other strategies that may have offered a greater likelihood of success is of no moment unless the petitioner proves that the alternative not chosen offered a substantially greater potential for success, which the PCRA court found Appellant did not demonstrate. *Commonwealth v. Williams*, 732 A.2d 1167, 1189 (Pa. 1999). We find no error. Hence, no relief is due on this claim.[37]

Under *Strickland*, counsel is presumed to be operating under sound legal strategy, even if not the most effective strategy.[38] A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "[39] To overcome that presumption, "a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."[40] This test tasks the district court with assessing "counsel's reasonableness ... on the facts of the particular case, viewed as of the time of counsel's conduct."[41]

Elaborating on *Strickland*'s standard, the Third Circuit has defined a "tiered structure" with respect to the strategic presumptions:

At first, the presumption is that counsel's conduct might have been part of a sound strategy. The defendant can rebut this "weak" presumption by showing either that the conduct was not, in fact, part of a strategy or

---

[37] *Commonwealth v. Diaz*, 1965 EDA 2019 at 7-9, 237 A.3d 436, 2020 WL 2200741 (Pa. Super. 2020) (unpublished memorandum).

[38] *Strickland*, 466 U.S. at 690–91; *see also Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003).

[39] *Strickland*, 466 U.S. at 689 (quotations omitted).

[40] *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

[41] *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

by showing that the strategy employed was unsound.... In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct ... However, if the Commonwealth can show that counsel actually pursued an informed strategy (one decided upon after a thorough investigation of the relevant law and facts), the "weak" presumption becomes a "strong" presumption, which is "virtually unchallengeable."[42]

"Courts have routinely declared assistance ineffective when 'the record reveals that counsel failed to make a crucial objection or to present a strong defense solely because counsel was unfamiliar with clearly settled legal principles.' "[43] "[T]he defendant is most likely to establish incompetency where counsel's alleged errors of omission or commission are attributable to a lack of diligence rather than an exercise of judgment."[44]

In their review of this issue, the state courts found that Diaz's trial counsel had a tactical reason for not objecting to the hearsay testimony. Diaz's counsel testified at the PCRA hearing, that he intended to have the jury hear the testimony, as it supported the defense theory of the crime, which strategy was that the prosecution could not prove intercourse beyond a reasonable doubt if it could have occurred entirely as a figment of K.O.'s intoxication. Counsel further testified that

---

[42]   *Thomas*, 428 F.3d at 499–500 (footnotes and internal citations omitted).

[43]   *Id.* at 501 (quoting 3 *Wayne LaFave et al., Criminal Procedure* § 11.10(c), at 721 (2d ed. 1999) ); *see also Cofske v. United States*, 290 F.3d 437, 443 (1st Cir. 2002) ("[C]ourts tend to be somewhat less forgiving where counsel altogether overlooks a possible objection or opportunity.") (citing *LaFave, supra*, § 11.10(c), at 714-15).

[44]   *Thomas*, 428 F.3d at 501 (quoting *LaFave, supra*, § 11.10(c), at 714).

he believed that the most direct evidence to support his theory was to allow the victim to narrate her realization with K.C as he believed that calling K.C. to testify would have reflected poorly on the defense.  Thus, the state courts reasonably concluded that trial counsel had a rational, strategic basis for not objecting to the hearsay testimony.  As such, Petitioner fails on the first prong of the *Strickland* analysis.  Habeas relief is not warranted on this claim.

> **2.      Trial counsel erred in failing to present exculpatory defense witnesses.**

Petitioner's second claim is that trial counsel was ineffective for failing to call four defense witnesses who were willing to testify.[45]  Specifically, Petitioner claims that two witnesses, Angel Ramos and Iraida Geldres would have testified that they were home when the complainant entered the house after the alleged rape and that she did not appear to be intoxicated in or in distress.[46]  A third witness, Nilda Diaz's step-son, Andrew Cordova, would have testified to the location of the van and that Diaz did not move the van for weeks.[47]  Finally, Petitioner claims that a fourth witness, Diaz's cousin, Damaris Otero, would have confirmed that Diaz was dropped off by his step-son Angel Ramos and that Diaz did not have the van with him.[48]  Petitioner claims that counsel was aware of the existence of the witnesses and that trial counsel had no strategic basis for failing to hire an

---

[45]   Doc. 16 at 39.

[46]   *Id*.

[47]   *Id*.

[48]   *Id*.

investigator, speak with potential defense witnesses, or present the testimony of

those witnesses who could have testified that the complainant was not intoxicated

when she arrived home and further that Diaz did not attempt to hide the van from

the police.[49]

In Pennsylvania, to prevail on a claim of ineffective assistance of counsel for

failure to call a witness, the appellant must show:

> (1) that the witness existed; (2) that the witness was available; (3) that
> counsel was informed of the existence of the witness or should have known
> of the witness's existence; (4) that the witness was prepared to cooperate and
> would have testified on appellant's behalf; and (5) that the absence of the
> testimony prejudiced appellant.[50]

Although this standard is not identical to the *Strickland* standard, the Third

Circuit has held that "the Pennsylvania test is not contrary to the test set forth in

*Strickland*."[51]  In this case, the state courts carefully considered Diaz's claim

regarding the alleged failure of trial counsel to investigate or question witnesses

and found this claim to be without merit.  Specifically, the Superior Court provided

the following details and analysis regarding the claim:

> Appellant's second claim of ineffectiveness involves counsel's alleged
> failure to investigate and call four witnesses, three of whom were
> present when he and Victim arrived home. Two of the proffered
> witnesses would have offered testimony tending to explain that
> Appellant went to New York for fear for his safety and established that
> the minivan where the alleged sexual assault occurred remained in

---

[49]  *Id.* at 40.

[50]  *Commonwealth. v. Fulton*, 830 A.2d 567, 572 (Pa. 2003) (citations omitted).

[51]  *Moore v. DiGuglielmo*, 489 Fed.App'x. 618, 626 (3d Cir. 2012) ("The five requirements
set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail
under *Strickland* on a claim of this nature.")

Appellant's driveway for at least a week after the incident. Such testimony, Appellant contends, would have undercut Trooper Wesnak's testimony implying that Appellant fled in the minivan to avoid apprehension and that the minivan was unavailable for execution of a search warrant.

All four witnesses testified at the evidentiary hearing. Appellant's stepson, Angel Ramos, and Mr. Ramos's girlfriend, Iraida Geldres, testified that they were at Appellant's home that evening when he and Victim returned. Mr. Ramos stated that when Victim walked in, "she walked in normally. She wasn't stumbling or staggering or anything like that. She just went right upstairs to my sister's room." N.T. PCRA Hearing, 3/25/19, at 32. He also reported that he received a telephone call early in the morning from Appellant. Appellant told him that "he was in trouble, that somebody was threatening his life[,]" and "I believe that somebody had came to the front door with a baseball bat and the husband . . . had a weapon . . . a firearm." *Id*. at 34. In response to that call, Mr. Ramos went to Appellant's home, retrieved him, and drove him to New York. At that time, Mr. Ramos saw the gray minivan parked in the driveway by the side entrance to the house, and he testified that the vehicle remained in that location for two weeks. *Id*. at 35.

Ms. Geldres confirmed that she saw Victim and Appellant briefly when they entered the kitchen that night. Victim was walking fine and showed no signs of inebriation. *Id*. at 43-44. Ms. Geldres stated that she would have been willing to testify if she had been asked.

Another stepson, Andrew Cordova, testified that he saw Victim come into the house and go upstairs. He saw nothing unusual in the way she proceeded. She seemed perfectly fine and there was no indication that she was intoxicated. *Id*. at 52-53. He also explained that, at around 2:00 or 3:00 a.m. that night, Victim's parents banged on the door. *Id*. at 54. The mother had a bat in her hand and the father carried a firearm. *Id*. The father said he was going to kill Appellant. *Id*. Mr. Cordova also testified that the van remained in the driveway for one week, and that he then moved it elsewhere. *Id*. at 56. Two weeks after the incident, Mr. Cordova drove it to New York and left it with his stepfather. No one contacted Mr. Cordova to determine what he knew about the incident or whether he was willing to testify, although he was willing to testify.

The fourth proffered witness was Appellant's cousin, Damaris Otero. Mr. Otero confirmed that Appellant was dropped off at his home in New York and remained there for several weeks. While there, Appellant used Mr. Otero's truck, and Mr. Otero stated that he never saw Appellant with a van while he was in New York. The witness stated that he would have testified if asked.

Trial counsel testified that he did not call Mr. Ramos, Ms. Geldres, and Mr. Cordova because they would have undermined the defense's theory that Victim was so intoxicated that her memory was unreliable. *Id*. at 54. He only called Appellant's wife because he wanted the jury to see that they were still together.

The PCRA court accepted that there were four witnesses willing and available to provide allegedly exculpatory testimony for Appellant, that Appellant informed his counsel of these witnesses, and that other trial witnesses referred to them. Addressing first the question of whether counsel was ineffective for failing to elicit testimony from these witnesses impeaching Victim's account of her intoxicated condition, the court concluded that counsel's decisions "were strategic decisions done with a purpose, as part of a coherent plan for the defense." PCRA Court Opinion, 6/11/19, at 14. Moreover, the court concluded that such testimony would have been cumulative of the testimony offered by Nilda Diaz, Appellant's wife, and thus, there was no prejudice. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1229 Pa. 2006) (finding no prejudice for purposes of PCRA where counsel failed to introduce cumulative testimony of substance abuse).

In addition, the PCRA court found no prejudice as the testimony of these witnesses "carried little probative value." PCRA Court Opinion, 6/11/19, at 15. The court pointed to inconsistencies in the testimony of Mr. Ramos and Ms. Geldres about their marital status, where they were standing when Victim entered the home that night, and whether Mr. Ramos was smoking a cigarette at the time. Their testimony also contradicted that of Appellant's wife, who told the jury that only her children were with her that night. In the court's view, the inconsistencies in the evidence diminished its value as impeachment, and its admission would have not changed the outcome of the case. *Id*. at 16.

As the PCRA court has the opportunity to assess and weigh the credibility of witnesses, we generally defer to its credibility determinations. *See Commonwealth v. Spotz, supra* at 1227 (citing *Commonwealth v. Spotz*, 870 A.2d 822, 836 (Pa. 2005)) ("Appellate courts do not act as fact finders, since to do so would require an assessment of the credibility of the testimony and that is clearly not our function."). We find support for the PCRA court's conclusion that the proffered testimony tended to undercut counsel's strategy, was cumulative of the testimony of Appellant's wife, and contained inconsistencies that rendered it weak impeachment evidence. In light of the foregoing, Appellant failed to demonstrate that there was a reasonable probability that, but for counsel's failure to elicit the foregoing testimony from these witnesses, the outcome of the trial would have been any different. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001) (defining prejudice in the PCRA context as a demonstration "that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different.").

Appellant also contends that the proffered testimony of Mr. Ramos and Mr. Cordova regarding the threats made against Appellant were critical to rebut Trooper Wesnak's implication that Appellant fled to avoid police questioning. In addition, their testimony that the minivan remained in the driveway tended to refute the Trooper's testimony that he could not find and impound the minivan and obtain a search warrant to examine it for DNA and other evidence. Appellant maintains that, without the witnesses' testimony, the jury was left to infer that Appellant fled out of consciousness of guilt, and that he hid the minivan to avoid its inspection and perhaps destroy evidence.

The PCRA court concluded that the proffered testimony did "not rebut Trooper Wesnak's testimony in any material way, and so would not have had a consequence on the trial." PCRA Court Opinion, 6/11/19, at 18. The court pointed to cross-examination of the Trooper that he did "not examine the van because he did not know where it was and could not contact [Appellant] about locating it." *Id.* (referencing N.T. Vol. 1, 2/11/15, at 187). The PCRA court found that none of the witnesses would have dispelled any suggestion that Appellant hid and destroyed evidence. The court characterized the Trooper's testimony as establishing only that, by the time he could locate the van, any evidentiary value would have been compromised. In the court's view,

the proffered testimony regarding the whereabouts of Appellant and the minivan "would not have been material or helpful to the defense, and so [Appellant's] claim for ineffective assistance must fail." *Id*. at 19.

Preliminarily, we note that much of what Appellant allegedly told Mr. Ramos during the late night telephone call, specifically that he had been threatened by Victim's parents, was arguably inadmissible hearsay. Mr. Cordova's account of Victim's parents banging on the door and threatening Appellant was largely cumulative of the testimony of Victim's mother. She testified that she had a baseball bat in her hand when she, accompanied by her former husband, entered Appellant's home to retrieve Victim on the night of the incident. Furthermore, neither Mr. Ramos nor Mr. Cordova could have testified from his own personal knowledge that Appellant went to New York for fear of retaliation from Victim's family, rather than to avoid police questioning.

Mr. Ramos and Mr. Cordova proffered inconsistent testimony regarding the length of time the minivan remained in Appellant's driveway. Assuming that the minivan was at Appellant's home for some time after the incident, perhaps Trooper Wesnak could have obtained a warrant to examine and test it for DNA evidence. However, such testimony did not exclude the possibility that the minivan would have been cleaned before a warrant could have been obtained. In short, while there may have been some minimal impeachment value from the testimony of these witnesses regarding the whereabouts of the minivan and its accessibility for testing, it was unlikely that the absence of this evidence changed the outcome of the proceeding in light of DNA evidence obtained from Victim. Hence, this claim does not merit relief.[52]

Under federal law, a failure to investigate potentially exculpatory witnesses may form the basis of ineffective assistance of counsel.[53]  To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the

---

[52]   *Commonwealth v. Diaz*, 1965 EDA 2019 at 9-15, 237 A.3d 436, 2020 WL 2200741 (Pa. Super. 2020) (unpublished memorandum).

[53]   *See Strickland*, 466 U.S. at 690-91; *see also Brown v. United States*, No, 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

investigation would have produced.  The focus of the inquiry must be on what information would have been obtained ... and whether such information, assuming admissibility in court, would have produced a different result."[54]  The petitioner must also demonstrate he suffered prejudice.[55]

Here, in finding counsel's performance was not deficient, the state courts did not violate clearly established law, and were not unreasonable in their application of *Strickland*.  As the Superior Court stated, the testimony of these witnesses would have carried little probative value and would have been cumulative of the testimony offered by Diaz's wife, Nilda Diaz.  Specifically, the court pointed to inconsistencies in the testimony of Mr. Ramos and Ms. Geldres about their marital status, where they were standing when the victim entered the home that night, and whether Mr. Ramos was smoking a cigarette at the time.  Their testimony also contradicted that of Nilda Diaz, who told the jury that only her children were with her that night.  In the court's view, the inconsistencies in the evidence diminished its value as impeachment, and its admission would have not changed the outcome of the case.  Additionally, the court found Mr. Cordova's testimony cumulative of the testimony of Victim's mother and that neither Mr. Ramos nor Mr. Cordova could have testified from his own personal knowledge that Diaz went to New York for fear of retaliation from Victim's family, rather than to avoid police questioning.

---

[54]  *See Brown*, 2016 WL 1732377, at *5 (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)).

[55]  *See Strickland*, 466 U.S. at 690-91.

Finally, while the court found that there may have been some minimal

impeachment value from the testimony of these witnesses regarding the

whereabouts of the minivan and its accessibility for testing, it was unlikely that the

absence of this evidence changed the outcome of the proceeding particularly in

light of DNA evidence obtained from victim.

   The Court is mindful that the Supreme Court has observed that a "doubly

deferential judicial review ... applies to a *Strickland* claim evaluated under the

§ 2254(d)(1) standard."[56]  Given this deferential standard, the Court cannot

conclude that the state courts' decisions relating to these ineffective assistance of

counsel claims were an unreasonable application of *Strickland* or based on an

unreasonable determination of the facts.[57]  To the contrary, both the PCRA court's

and Superior Court's analyses of these ineffective assistance of counsel claims are

thorough and well-supported by both the law and the facts of the Petitioner's case.

Diaz has also failed to show potential information from these witnesses would

have produced a different result at his trial.  He has thus failed to establish

prejudice.[58]  Accordingly, Petitioner is not entitled to relief on this claim.

---

[56]  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas").

[57]  *See, e.g., Eaddy v. Sauers*, No. 10-7538, 2011 WL 7409076, at *8 (E.D. Pa. Aug. 2, 2011) ("counsel's decision to not call William Jones as a witness was reasonable since his proposed testimony ... would not have helped Petitioner"), *report and recommendation adopted*, 2012 WL 569369 (E.D. Pa. Feb. 22, 2012).

[58]  *See Blasi v. Atty gen. of Com. Of Pa*, 120 F. Supp. 2d 451, 474 (M.D. Pa. 2000) ("the defense cannot have been prejudiced unless the potential witness had favorable evidence to provide").

### 3.    Trial counsel erred in failing to object to Trooper Wesnak's testimony.

Petitioner's final claim is that trial counsel was ineffective for failing to object and seek a curative instruction to Trooper Wesnak's commentary on Petitioner's refusal to give a statement and his decision to hire an attorney.[59] Specifically, Petitioner claims that Trooper Wesnak testified on direct examination that he told Nilda Diaz that he was looking for Diaz and that he was unable to make contact with him.[60] Trooper Wesnak was then asked, "Did you let his wife know that you were looking for him," to which he responded, "Yes." Wesnak testified that he drove by Diaz's house several times as part of the effort to locate Diaz, suggesting that Diaz was evading Trooper Wesnak's attempts to question him.[61]

On cross-examination, defense counsel attempted to question the trooper regarding whether he had obtained a search warrant for Diaz's van. Instead of simply answering the question regarding the van, Trooper Wesnak volunteered that "unfortunately he [Diaz] fled the area prior to my being able to question him on that date, and I was never able to find it."[62]  When defense counsel asked, "Did you subsequently apply for a search warrant for the van?", Trooper Wesnak responded, "By the time Mr. Diaz turned himself in, on the advice of his attorney, he didn't

---

[59]  Doc. 16 at 49.
[60]  *Id*.
[61]  *Id*.
[62]  *Id*. at 50.

want to answer any more questions.[63]   And by that time it was very obvious that he

could have cleaned up the van and no other evidence would have been able to be

obtained from the van."[64]   Relying on *Commonwealth v. Molina*,[65] Petitioner

argues that defense counsel should have objected because both Pennsylvania and

federal appellate courts have long held that the prosecution may not use a

defendant's decision to remain silent or decision to retain counsel as evidence of

guilt.[66]

"*Miranda*[67] warnings carry the Government's 'implicit assurance' that an

arrestee's invocation of the Fifth Amendment right to remain silent will not later be

used against him."[68]   In *Doyle v. Ohio*, 426 U.S. 610, 617–18, (1976), the United

States Supreme Court held that "every post-arrest silence is insolubly ambiguous"

because it "may be nothing more than the arrestee's exercise of [her] *Miranda*

right."  *Doyle* errors of prosecutorial comment on a defendant's post-arrest silence

can be harmless if the Government "prove[s] beyond a reasonable doubt that the

error complained of did not contribute to the verdict obtained."[69]   This analysis

requires an examination of "the totality of the circumstances."[70]   The question

---

[63]   *Id*.
[64]   *Id*.
[65]   104 A.3d 430 (Pa. 2014).
[66]   *Id*.
[67]   *Miranda v. Arizona*, 384 U.S. 436 (1966).
[68]   *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 335 (3d Cir. 2010) (quoting *Gov't of the V.I. v. Davis*, 561 F.3d 159, 163–64 (3d Cir. 2009)).
[69]   *Davis*, 561 F.3d at 165 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).
[70]   *Martinez*, 620 F.3d at 337-38.

becomes whether the "constitutional trial error was harmless beyond a reasonable doubt."[71]

Furthermore, not every reference to a defendant's silence results in a *Doyle* violation. There is no due process violation when a prosecutor comments on a defendant's pre-arrest silence or failure to come forward because there has been no "implicit promise that his choice of the option of silence would not be used against him."[72] In *Fletcher v. Weir*, 455 U.S. 603, 606 (1982), the United States Supreme Court held where there has been no governmental action to induce the defendant to remain silent, the *Miranda*-based rationale does not apply. A prosecutor may impeach a defendant's testimony using pre-arrest silence,[73] post-arrest, pre-*Miranda* warning silence,[74] and any voluntary post-*Miranda* warning statements.[75]

In denying the claim on its merits, the Superior Court began its analysis by reiterating the Fifth Amendment's protection against self-incrimination:

> Preliminarily, we note that while Appellant characterizes the Trooper's testimony as a reference to his **post-arrest** silence, it is unclear from the certified record whether Appellant was under arrest or had received his *Miranda* warnings when he invoked his Fifth Amendment right against self-incrimination. However, the timing of Appellant's assertion of his right to remain silent does not impact our legal analysis.[76] In *Molina, supra* at 450-51, a pre-arrest silence case, our

---

[71] *Davis*, 61 F.3d at 165.

[72] *Portuondo v. Agard*, 52 9 U.S. 61, 75 (2000) (emphasis in original).

[73] *Jenkins v. Anderson*, 447 U.S. 231, 240 (1908)

[74] *Fletcher*, 455 U.S. at 605–606.

[75] *See Anderson v. Charles*, 447 U.S. 404, 408–409 (1980).

[76] Appellant's argument did not turn on whether the Trooper's reference was to his pre-arrest or post-arrest silence. He cited Commonwealth v. Molina, 104 A.3d 430, 450-51 (Pa. 2014), for the proposition that the timing of the silence in relation to an arrest was not relevant to the right against self-incrimination. See Appellant's brief at 24.

Supreme Court held that "the timing of the silence in relation to the timing of an arrest is not relevant to the right against self-incrimination." The relevant inquiry was whether the mention of the defendant's silence was used by the prosecution as substantive evidence of guilt. The Court held that such use was prohibited unless it fell within an exception such as impeachment of a testifying defendant or fair response to an argument of the defense.

In *Molina*, the prosecutor argued that the defendant's silence was "most telling," asked the jury "why" the defendant refused to cooperate with the detective, and directed the jury to "[f]actor that in when you're making an important decision in this case as well." *Id*. at 452-53. Our High Court held that the defendant's right against self-incrimination was violated as the prosecutor used the defendant's silence to imply his guilt, and concluded that the error was not harmless.

\* \* \*

As this Court held in *Commonwealth v. Guess*, 53 A.3d 895, 903 (Pa.Super. 2012), the rule precluding reference to a defendant's silence "'does not impose a *prima facie* bar against any mention of a defendant's silence' but rather 'guards against the exploitation of a defendant's right to remain silent by the prosecution.'" *Id*. citing *Commonwealth v. Adams*, 39 A.3d 310, 318 (Pa.Super. 2012) (quoting *Molina*, supra at 63) (emphasis in original). Moreover, in *Adams*, we relied upon *Molina*, in concluding that, "the mere revelation of a defendant's pre-arrest silence does not establish innate prejudice where it was not used in any fashion that was likely to burden defendant's Fifth Amendment right or to create [an] inference of admission of guilt." *Adams*, *supra* at 318 (quoting *Molina*, supra at 56).[77]

The Court finds that the Superior Court did not apply a rule of law that contradicts established Supreme Court precedent, and its decision was not contrary to clearly established Supreme Court precedent.  Accordingly, the issue that

---

[77] *Commonwealth v. Diaz*, 1965 EDA 2019 at 9-15, 237 A.3d 436, 2020 WL 2200741 (Pa. Super. 2020) (unpublished memorandum)(emphasis in original).

remains is whether the adjudication by the Superior Court survives review under the "unreasonable application" clause of § 2254(d)(1).

At Petitioner's evidentiary hearing, trial counsel maintained that he did not object to Trooper Wesnak's testimony because the jury had already heard the statement, and based on his experience, an objection or curative instruction would only have highlighted the testimony.[78] The PCRA court viewed Trooper Wesnak's reference as fair response to the defense's criticism of the Trooper's thoroughness in failing to apply for a search warrant for the Diaz's minivan.[79]  The court also characterized the Trooper's statement as a "fair recounting of the investigation concerning the van" and an explanation why he believed that "enough time had passed to make . . . a search . . . futile."[80]  In the court's view, the answer did not imply that Diaz's silence was an admission of guilt, but merely explained the limits placed on the police investigation.[81]  Thus, the PCRA court concluded, there was "no arguable merit to the claim that trial counsel should have objected[,]" or in the alternative, trial counsel had a reasonable basis for not objecting.[82]

The Superior Court, in finding no error in the PCRA court's conclusion that Diaz is not entitled to relief on this claim, rendered the following opinion:

> The reference herein was brief and elicited upon questioning by the defense.  It was not exploited by the Commonwealth on cross-

---

[78]   Doc. 16-1 at 170, N.T. PCRA Hearing, 3/25/19, at 23.
[79]   Doc. 16-1 at 145.
[80]   *Id.*
[81]   *Id*.
[82]   *Id*.

examination or during closing argument. In response to defense counsel's question why he did not obtain a search warrant to examine the minivan for evidence of the alleged sexual assault, Trooper Wesnak testified that he did not seek a search warrant because he did not know where the van was and he could not locate Appellant to ask him. He added that, by the time Appellant turned himself in, he would not answer questions based on the advice of counsel.

\* \* \*

We find that such evidence of Appellant's silence was fair response to the defense's argument that the Trooper had not sought a search warrant for the vehicle and an explanation of the investigative timeline. Consequently, an objection would not have altered the outcome of this case. *See Commonwealth v. DiNicola*, 866 A.2d 329 (Pa. 2005) (reference to a defendant's refusal to speak to trooper constituted fair response to defense counsel's questioning of the adequacy of the trooper's investigation). Herein, the brief reference to Appellant's silence served another purpose other than suggesting guilt. *See Adams*, supra (finding that a brief reference by detective to defendant's silence did not violate the Fifth Amendment where it was not intended to imply a tacit admission of guilt but to recount the sequence of the investigation).

We find misplaced Appellant's reliance upon *Costa, supra*. Therein, we determined that trial counsel was ineffective for failing to object when a police detective testified that the defendant said nothing to him when charges were filed against him for the molestation of a young boy. The court concluded that there was no proper purpose for the testimony other than to highlight the defendant's silence, which was not the case herein. Hence, we find no error in the PCRA court's conclusion that Appellant is not entitled to relief on this claim.[83]

Viewing the Superior Court's disposition of this claim through the

deferential lens of the AEDPA, we conclude that Diaz has failed to carry his

burden to persuade this Court that the Superior Court's adjudication was

---

[83] *Commonwealth v. Diaz*, 1965 EDA 2019 at 9-15, 237 A.3d 436, 2020 WL 2200741 (Pa. Super. 2020) (unpublished memorandum).

unreasonable. The record supports the Superior Court's conclusion that the reference to Diaz's silence, elicited in questioning by defense counsel, was brief in context and did not occur in a context likely to suggest to the jury that Diaz's silence was the equivalent of a tacit admission of guilt.  For these reasons, the Court finds that Diaz is not entitled to habeas relief on his third and final ground.

## III.   CERTIFICATE OF APPEALABILITY

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.' "[84]  "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[85]

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong.  Accordingly, a certificate of appealability will not issue.

---

[84]  *Tomlin v. Britton*, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).
[85]  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV.   CONCLUSION

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge